STEPTOE, JUDGE:
Claimant, County Commission of Mineral County, provides and maintains a facility for the incarceration of prisoners who have committed crimes in Mineral County. Some of the prisoners held in the facility are guilty of crimes which require the sentencing of prisoners to facilities provided and maintained by the respondent, Division of Corrections. Claimant brought this action to recover medical payments and the costs of housing for prisoners who have been sentenced to a State penal institution, but due to circumstances beyond the control of the county, these prisoners have had to remain in the county prison facility for periods of time beyond the date of sentencing order. Claimant contends respondent is liable for these additional expenses not normally incurred by a county.
Respondent contends that the law of custom and usage applies to this claim; that the respondent should not be required to make retroactive payments where respondent did not have prior notice that changes would be incurred; and, that respondent does not have a moral obligation to pay all or any part of this claim.
*89 The claimant herein brought this action in the West Virginia Court of Claims as this Court has jurisdiction conferred upon it by the Legislature as the body created to hear claims against the State or agencies thereof. See West Virginia Code Chapter 14, Article 2, Sections 1-29. This Court has entertained two previous claims against respondent involving the issue of prisoners whose housing and/or medical expenses were incurred by county or by a regional jail. See Kanawha County Comm'n. v. Dept. of Corrections, Claim Nos. CC-87-489 and CC-87-724, Unpublished Opinion issued Nov. 28,1989, and Regional Jail and Correctional Facility Authority v.Dept. of Corrections, CC-89-382, Unpublished Opinion issued Jan. 19,1990.[1] The Court made awards in those claims and appropriations were forthcoming from the West Virginia Legislature to satisfy the awards. Thus, the Court of Claims is the only forum afforded the claimant for the matters in controversy in this claim.
A review of the back ground for this claim is essential. It has been the custom that prisoners indicated for crimes and tried in circuit courts are housed in county prison facilities until the conclusion of the trial, and further, until the sentencing order is entered. The language for the sentencing order, also known as commitment paper, is provided in W. Va. Code 62-7-10. It states, in part, as follows:
....It is adjudged that the defendant is hereby committed to the custody of the Warden of the West Virginia Penitentiary (Superintendent of the West Virginia State Prison for Women) or his (her) authorized representative for imprisonment for a period of....
Conviction Date:
Sentence Date:
Effective Sentence Date:
It is adjudged that.
It is ordered that the clerk forthwith transmit this record, duly certified, of the judgement and commitment to the Warden of the West Virginia Penitentiary (Superintendent of the West Virginia State Prison for Women) and that this record serve as .County,
*90 Claimant herein had á policy of informing the State penal institutions (normally Huttonsville Correctional Center) that it was bringing a prisoner to the facility and, in fact, transported the prisoner to the facility a short time after the sentencing order was entered.[2] This was the custom until an Order was issued by the Randolph County Circuit Court in Nobles v. White, Civil Action No. 83-C-249. That Order, entered on August 17, 1987, provided a specific "ceiling" for the number of inmates assigned to Huttonsville Correctional Center at 500 inmates. An Amended Order entered on October 9, 1987, provided a ceiling of 550 inmates and stated that "any deviation from this ceiling of 550 can only be by specific written order of the Court." A slight deviation was permitted by the Court on April 9, 1988, to 553 inmates, but the limit of 550 inmates is in effect as of this date.
The direct result of this Order was to increase prison populations at the county level as those inmates sentenced to State institutions could not be transported by the counties nor the Division of Corrections to Huttonsville Correctional Center, the facility where inmates are transferred for evaluation prior to being placed in other State facilities.
The Court is very concerned with the situation facing the counties and the respondent. The counties are incurring expenses on a daily basis for housing inmates who are actually wards of the respondent, Division of Corrections. The failure of the Executive and Legislative branches of government to construct new prison facilities created a situation which has ultimately fallen upon the shoulders of the county commissions. The county commissions have no means or authority for coming up with the additional funds needed to provide for housing these inmates. The taxpayers in the counties have been bearing a burden which was certainly unanticipated. This has undoubtedly affected the financial status of some counties more than others. The Executive and Legislative branches of government ultimately created an agency known as the Regional Jail and Correctional Facility Authority. This agency has the authority to institute a bond program for the construction of new prison facilities. See W.Va. Code Chapter 31, Article 20, Sections 1-26. This new agency is now in the process of constructing new prison facilities to resolve the overcrowded conditions which were addressed by the Nobels v. White Order. However, the county commissions have incurred and will continue to incur expenses for housing these inmates until the new prison facilities are completed.
This Court may make retroactive awards only. It does not have statutory authority to make prospective awards. The Court is of the opinion that county commissions are incurring additional expenses for the housing of inmates who would normally be transported to a State facility after the sentencing orders are entered. Claimant herein has held inmates from five days to 339 days beyond the sentencing order date. The average number of additional inmate days is *91 approximately 146 days. The respondent has had the benefit of using claimant's facility and resources for inmates who are by law its responsibility. The Court is of the opinion that this constitutes an unanticipated and significant expense to claimant. These expenses were not contemplated, and claimant did not have the opportunity to provide for these expenses in this budget. It appears to the Court that there is a moral obligation on the part of the State to ease the burden which claimant and the other counties have incurred in order to afford protection to the citizens of the State of West Virginia. For these reasons, the Court is of the opinion that claimant is entitled to a reasonable award for the additional expenses which it has incurred for housing inmates sentenced to a State penal institution.
A determination of the amount of the award is an issue in and of itself. Respondent contends that the amount expended by claimant for the additional inmate days is negligible while claimant contends the award should be based upon its actual expenses of $25.00 per inmate day. For this Court to review every item of expense for each inmate or attempt to calculate the "actual" expense for each additional inmate day would be a most difficult undertaking. The Court, therefore, has determined that, absent a showing that additional personnel were employed for the jail, or that overtime had to be paid to existing personnel, or that there were other extraordinary expenses incurred as a direct result of the State prisoners, a daily rate of $15.00 for each inmate is fair and reasonable to both claimant and respondent at this time. Further, the Court is of the opinion that a two week holding period in a county jail beyond the date of a sentencing order for inmates is also fair and reasonable to both parties. The Court directs the parties herein to calculate a dollar figure based upon the time frame and daily inmate rate established by the Court hereinabove, excluding, however, all days wherein inmates remained in the county as the result of a stay pending appeal or at the request of county officials, and submit the amount to the Court in a written stipulation. The stipulation shall be filed by the parties on or before December 12, 1990.
As to the issue of medical expenses incurred by claimant, the parties are in agreement that claimant is entitled to an award of $5,181.46. The Court therefore makes a partial award in the amount of $5,181.46 to the claimant.
Partialaward: $5,181.46.

 In the Kanawha County Commission claim the Court held that the Department of Corrections was liable to Kanawha County for the housing expenses of prisoners in the county jail after a reprieve by the Governor. The Court of claims referred to the Supreme Court of Appeals decision in The County Commission of Mercer County v. A. V. Dodrill, Comm’r, Dept. of Corrections, or his named successor, April 19, 1989. In the Regional Jail Claim the Court of Claims made an award for expenses incurred by the Eastern Regional Jail Authority for housing inmates who were the responsibility of the Department of Corrections. The Department had admitted the validity of the claim in order.

 This practice varies from county to county. There are other counties which held prisoners for periods up to two weeks before the respondent sent a van to pick up the prisoners and transport them at one time to a State facility.